UNITED STATES OF AMERICA
IN THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**UNITED STATES OF AMERICA,**
   **Plaintiff,**

V.                Case No.:  21-cr-20080
                  Hon. Stephanie Dawkins Davis

**ANTHONY STONE,**
   **Defendant.**
_____

## MOTION TO SUPPRESS EVIDENCE

Now comes defendant, Anthony Stone, through counsel, Randall C. Roberts, who says this Indictment is based upon a warrantless police apprehension and search, which was unreasonable and violated the Fourth Amendment (U. S. Const. Amend. IV), as proscribed by Supreme Court precedent. (e.g., *Arizona v. Gant*, 129 S. Ct. 1710 (2009); *Terry v. Ohio*, 392 US 1 (1968)).  Any evidence, including statements produced from this warrantless search must be suppressed as fruits of the poisonous tree.  (*Wong Sun v. U.S.*, 371 U.S. 471 (1963); *Brown v. Illinois*, 422 U.S. 590 (1975)).

Therefore, defendant requests that this Court suppress all physical evidence and defendant's statements made as a result of the unlawful arrest/seizure and search above described, conduct a hearing or hearings as necessary to develop the facts, and allow supplemental briefing after such hearings.  This motion is based

upon the following memorandum, and any hearings or argument of counsel otherwise entertained.

s/Randall C. Roberts P28595
Attorney for Defendant Stone
120 4th Ave.
Ann Arbor, MI 48104
734-677-3393
randallcroberts51@yahoo.com

# **BRIEF IN SUPPORT OF MOTION TO SUPPRESS EVIDENCE**

# **STATEMENT OF ISSUE PRESENTED**

WHETHER THE FOURTH AMENDMENT, U.S. CONST. AMEND. IV, ALWAYS PERMITS A POLICE OFFICER TO SEIZE A MOTORIST WHEN THE ONLY THING THE OFFICERS KNOWS IS THE STATE DATA BASE SHOWS THE VEHICLE HAD NO INSURANCE AS LONG AGO AS 15 DAYS BEFORE THE DATA CHECK?

PLAINTIFF WOULD ANSWER: YES

DEFENDANT SAYS: NO

# **CONTROLLING AUTHORITY**

*Riley v. California*, 573 U.S. 373, 381 (2014)
*Navarette v. California*, 572 U.S. 393, 396-397 (2014)
*Terry v. Ohio*, 392 U.S. 1, 19-30 (1968)
*United States v. Arvizu*, 534 U.S. 266, 274 (2002)
*Arizona v. Johnson,* 555 U.S. 323 (2009)
*Arizona v. Gant,* 556 U.S. 332 (2009)

I.     PROCEDURAL HISTORY

Defendant, Anthony Stone, was initially charged by Complaint (20-mj-30369) filed on September 11, 2020 with Possession of a Firearm by a Prohibited Person (18 U.S.C. 922(g)).  The Complaint was dismissed upon motion by the Government September 28, 2020.  This Indictment charging the same violation as the Complaint was filed on February 3, 2021.

II.    ALLEGATIONAL PREMISES

September 8, 2020, the Michigan State Troopers were on routine patrol in broad daylight at approximately 6:31 p.m. (Complaint, ecf 1, filed 9/11/20, PgID 3.)  Their vehicle was travelling east-bound on Corunna Rd. in Flint, when they saw the car driven by Mr. Stone pull out of the driveway and turn right, west-bound onto Corunna to travel west.  Stone's vehicle was pulling away from the business at that location, a motel, that they knew from experience was a hotbed of activity involving use or sales of controlled substances.  The reports available make it clear that no driving infraction was committed and the only reason the Troopers did a U-turn was to follow Stone's vehicle because of where it was coming from (the motel).  No reference was made to an unlawful entry onto the roadway, or speeding, weaving, tires screeching, or anything other than where the car was coming from.  No mention was made about their observing any other driving irregularities.  Nothing in the discovery reflects they saw him coming out

of the office or a specific room, and nothing to reflect how long Stone's vehicle was even in the establishment's driveway/parking lot.

MSP quickly closed the distance between their car and Stone's and then followed, while they ran his plate number. Their inquiry showed that the car was not validly insured. The statute now mandates that this insurance coverage is updated twice monthly, on the 1st and the 15th of the month. Based on that data search, only, they conducted a vehicle stop, which Stone responded to appropriately, and pulled into the Walmart parking lot, adjacent to Corunna Rd.

The Troopers approached the vehicle and its' occupants and noticed a 90 % empty plastic liquor bottle in the cupholder. Stone handed the bottle to Trooper Chiros, who poured it out in front of the squad car camera. Both Stone and the passenger were ordered out of the vehicle and they were directed to stand at the front of Stone's vehicle. The contents of the bottle had an odor of alcohol, but interestingly, Stone told them it was real old, and neither Trooper reported any odor of intoxicants emanating from Stone's breath or person. Trooper Chiros asked Stone if they could search his car and Stone said yeah. Trooper Ager began his search which he reported was based on the verbal consent, and probable cause/exigent circumstances due to the open intoxicants in the vehicle. Nothing was mentioned about the insurance. The gun was found inside a zippered leather pouch under an extra plastic flap in between the back seat and the trunk. Suddenly

Stone took off running. He was chased down and tazed several times, finally ending up arrested after another pair of troopers arrived and assisted in his apprehension. It was quite the chase. Both Stone and one Trooper were treated at a local hospital.

Mr. Stone was arrested and later interviewed based on the above.

III. DISCUSSION

The Fourth Amendment ensures that individuals have the right to be free from "unreasonable searches and seizures." U.S. Const. amend. IV. "As the text makes clear, 'the ultimate touchstone of the Fourth Amendment is "reasonableness." ' " *Riley v. California*, 573 U.S. 373, 381 (2014) (quoting *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006)). Although ordinarily a search or seizure must be based on a warrant supported by probable cause, this Court has long permitted brief "investigative stops"—including traffic stops—when an officer can articulate a "reasonable suspicion" of criminal activity. *Navarette v. California*, 572 U.S. 393, 396-397 (2014); *Terry v. Ohio*, 392 U.S. 1, 19-30 (1968). The reasonable-suspicion standard is intended to balance the government's general interest in enforcing the law against the public's interest in being free from unwarranted governmental intrusion, and whether a search or seizure is reasonable depends on the context in which it is undertaken. *United States v. Brignoni-Ponce*, 422 U.S. 873, 880-883 (1975); *Terry*, 392 U.S. at 20-21.

A State bears the burden of establishing that an officer had a reasonable suspicion of illegal activity at the time of a seizure by creating a record that would support such a conclusion. *Ornelas v. United States*, 517 U.S. 690, 699-700(1996); *Brown v. Texas*, 443 U.S. 47, 52 (1979); *Delaware v. Prouse*, 440 U.S. 648, 659 (1979); *see Illinois v. Wardlow*, 528 U.S. 119, 140 (2000) (Stevens, J., concurring in part and dissenting in part) ("It is the State's burden to articulate facts sufficient to support reasonable suspicion.").

Although it may be relatively easy in many cases for a police officer to establish reasonable suspicion that a driver is violating a traffic-related law, an officer must do so in *every case* in which such a stop is challenged. The Fourth Amendment requires a State to actually do the work required to establish reasonable suspicion when a seizure is challenged. The Fourth Amendment does not incorporate vague demographic averages; it requires that an officer demonstrate "a particularized suspicion" that "the particular person stopped" was engaged in criminal activity. *United States v. Cortez*, 449 U.S. 411, 417-418 (1981).

Defendant urges the Court to adopt his position that this warrantless incursion was unreasonable and violated his Constitutional right to be free from such seizures of his person, vehicle and any searches related. The reviewed material reflects police action in each circumstance rife with conjecture and

speculative conclusions that do not rise to the level or measure of evidence or information required by the Constitution and caselaw to support as lawful this otherwise unconstitutional incursion into Stone's life as well as the evidence seized as a direct result. At any rate, we believe it absolutely critical to a fair determination of these issues that the Court allow an evidentiary hearing to be conducted to adequately develop the facts of each stop/seizure in order to make a fully informed decision on our challenge.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . .", *U.S. Const. amend. IV*. Under the Fourth Amendment, police officers may stop a vehicle if they have a reasonable suspicion of criminal activity. *United States v. Flores*, 571 F.3d 541, 544 (6th Cir. 2009). "Reasonable suspicion" requires less proof than "probable cause," but it must be "'more than an inchoate and unparticularized suspicion or hunch.'" *United States v. Garrido*, 467 F.3d 971, 981 (6th Cir. 2006) (quoting *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581 (1989). The same modicum of facts must exist to support a pedestrian stop. (*Terry v. Ohio*, 392 US 1 (1968)).

In determining whether reasonable suspicion exists, the court must look at the "totality of the circumstances" to determine whether the officer had a "particularized and objective basis" to suspect legal wrongdoing. *United States v.*

*Arvizu*, 534 U.S. 266, 273, 122 S.Ct. 744 (2002). The totality-of-the-circumstances analysis "allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them 'that might well elude an untrained person.'" *United States v. Pearce*, 531 F.3d 374, 380 (6th Cir. 2008) (quoting *Arvizu*, 534 U.S. at 273); *accord Terry v. Ohio*, 392 U.S. 1, 21-22, 88 S. Ct. 1868 (1968) ("[T]he police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.. . . Anything less would invite intrusions upon constitutionally guaranteed rights based on nothing more substantial than inarticulate hunches. . . ."). Although the reasonable-suspicion calculation examines the totality of the circumstances, even where the government points to several factors that the courts have recognized as valid considerations in forming reasonable suspicion, they may not always provide reasonable suspicion, particularly if they are relatively minor and subject to significant qualification. *United States v. Bell*, 555 F.3d 535, 540 (6th Cir. 2008)*, cert. denied*, 129 S.Ct. 2887 (2009). The "reasonable suspicion" determination thus, is ultimately a mixed question of law and fact (or, in other words, an application of law to fact), by which the court determines whether the facts surrounding the officer's determination are of sufficient legal significance to

10

constitute reasonable suspicion. *United States v. Townsend*, 305 F.3d 537, 541 (6th Cir. 2002).

Even assuming *arguendo* that the police had a reasonable articulable suspicion to justify an investigative traffic stop, the police lacked probable cause to arrest Defendant and search the vehicle. "[W]hile an investigative stop must be supported by reasonable, articulable suspicion that criminal activity may be afoot, an arrest must be supported by probable cause." *United States v. Brown*, 51 F.3d 131 (8th Cir. 1995) (quoting *United States v. Raino*, 980 F.2d 1148, 1149 (8th Cir.1992), *cert. denied*, 507 U.S. 1011, 113 S.Ct. 1662 (1993)); *Michigan v. Summers*, 452 U.S. 692, 699-700, 101 S.Ct. 2587, 2593 (1981) ("[E]very arrest, and every seizure having the essential attributes of a formal arrest, is unreasonable unless it is supported by probable cause."). Probable cause is a more demanding standard than reasonable suspicion. *See Illinois v. Wardlow*, 528 U.S. 119, 123-24, 120 S.Ct. 673 (2000). "'Probable cause is defined as reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion.'" *United States v. McClain*, 444 F.3d 556, 562 (6th Cir. 2005) (quoting *United States v. Ferguson*, 8 F.3d 385, 392 (6th Cir.1993) (*en banc*)), *cert. denied*, 549 U.S. 1030 (2006). All the Troopers had was information that could have been mitigated or corrected within the previous 15 days. We are aware of a case that certainly will be mentioned by the government, *U.S. v. Lawrence*, 425 F. Supp. 3d 828, and we

say with due respect to Judge Ludington, reasonable minds may differ, and the case is distinguishable on its' facts (three specific infirmities were revealed in the data search of the license plate, two of which involved the licensing of the owner, and her freedom). And, the recent decision of the Supreme Court, *Kansas v. Glover,* No. 18-556, decided 4-6-2020, which, again involved the validity of the vehicle owner's license to operate is also distinguishable for the same reason. Our case involved a non-operational, non-safety vehicle issue unrelated to the driver's license validity or some other improper operation/driving at the time of the stop.

    The Fourth Amendment to the U.S. Constitution states "[t]he right of the person to be secure in their persons . . . and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause." The U.S. Supreme Court has held that "a police officer effectively seizes `everyone in the vehicle,' the driver and all passengers" during a traffic stop. *Arizona v. Johnson,* 555 U.S. 323, 326, 129 S.Ct. 781, 172 L.Ed.2d 694 (2009) (citing *Brendlin v. California,* 551 U.S. 249, 255, 127 S.Ct. 2400, 168 L.Ed.2d 132 (2007)). As a result, a police officer "must possess either probable cause of a civil infraction or reasonable suspicion of criminal activity" to initiate a traffic stop. *U.S. v. Lyons,* 687 F.3d 754, 763 (6th Cir. 2012).

To determine whether police officers had probable cause to arrest, the court considers the totality of the circumstances and whether the "facts and circumstances" of which the police had knowledge at the moment of the arrest were "sufficient to warrant a prudent person . . . in believing . . . that" the seized individual "ha[d] committed . . . an offense." *Hinchman v. Moore*, 312 F.3d 198, 204 (6th Cir.2002) (internal quotation marks omitted). Further, the belief of guilt must be particularized with respect to each person to be seized. *United States v. Romero*, 452 F.3d 610, 616 (6th Cir.2006), *cert. denied*, 549 U.S. 1237 (2007). Probable cause to search is similarly defined and is said to exist when there is "a fair probability, given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place." *United States v. Howard*, 621 F.3d 433, 453 (6th Cir. 2010) (quoting *United States v. Lattner*, 385 F.3d 947, 951 (6th Cir.2004)). It is the Government's burden to establish the legality of a warrantless search by a preponderance of the evidence. *United States v. Domenech*, 623 F.3d 325, 331 (6th Cir. 2010) (citing *United States v. Haynes*, 301 F.3d 669, 677 (6th Cir.2002)).

Next, we address the idea of consent here. It was very evident from the discovery that Stone agreed to the search, but, immediately began requesting that the Trooper access his trunk compartment through the outer rear hatch, specifically. Despite his requests the officer went ahead through the rear seat by

13

levering it into the down position. Hardly consent given the objection to this right of access!

If a police officer receives consent for the search, "a warrantless search does not offend the Constitution." *United States v. Moon,* 513 F.3d 527, 537 (6th Cir. 2008). Consent "must be voluntary and freely given." This means consent is "unequivocal, specific and intelligently given, uncontaminated by any duress or coercion." *Moon,* 513 F.3d at 527 (citing *United States v. McCaleb,* 552 F.2d 717, 721 (6th Cir. 1977)). Consent to search "is a question of fact to be determined from the totality of all the circumstances." *Moon,* 513 F.3d at 537 (*quoting Schneckloth v. Bustamonte,* 412 U.S. 218, 227, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973)).

As a final note, their interest in stopping the vehicle was only based upon the observation of **where Stone was leaving**. The Troopers certainly could not see his plate when they passed and the front of the vehicle (prior to its' west-bound turn from the motel drive) was all they could see. Indeed, the report reflects they had to turn around and catch up just to see the plate on the rear of the vehicle. Their chasing after him because he was leaving that particular motel was insufficient and should not be considered in the mix.

The Supreme Court reached a similar conclusion in *Brown v. Texas*, *supra*, when it held that a defendant's presence "in a neighborhood frequented by drug users, standing alone, is not a basis for concluding that [the defendant] himself was

engaged in criminal conduct." 443 U.S. at 52. The Court in *Brown* explained that a finding of reasonable suspicion must be based on "objective facts" "in the record." *Id.* at 51, 52. And the Court emphasized that, although inferences an officer may draw based on his training and experience can form the basis of reasonable suspicion, an officer's assertion that an individual "looked suspicious" is not entitled to deference in the reasonable-suspicion analysis. *Id.* at 49, 52 n.2.

It appears what the Troopers were engaged in was a fishing expedition. They wanted to have a chance to search that vehicle because of where it had come from. When they activated their lights, etc., Stone pulled into a safe spot in a parking lot of a major store. As it happened, the vehicle was not impeding traffic, or otherwise blocking a road or being on a shoulder in a dangerous situation. The Supreme Court also gave us their limitation of vehicle searches in *Arizona v. Gant*, 556 U.S. 332 (2009). Police may search the passenger compartment of a vehicle only if it is reasonable to believe the arrestee might access the vehicle at the time of the search for a weapon, or the vehicle contains evidence of the offense of arrest. Here, the arrestee (Stone) was out of the car unable to access the discovered gun, and what additional evidence of driving without insurance would be produced in a compartment search? They poured out what little evidence of open alcohol existed at the beginning of their contact, so that doesn't seem to line up with a search for more open intoxicants. The car was safe. The car could have been

15

locked up and the keys turned over to anyone Stone might have arranged to re-up his insurance certificate, after that individual brought the new certificate of Insurance to their post to prove the vehicle was insured. He was validly licensed and insurance coverage has nothing to do with vehicle safety or the vehicle being properly driven. They just wanted to search that vehicle, period.

Wherefore, for all the reasons stated the Court should suppress all the physical evidence and statements obtained from use at trial, conduct an evidentiary hearing to determine this issue, allow and consider supplemental briefing following any such hearing, and, grant any other relief deemed appropriate.

Respectfully submitted,

s/Randall C. Roberts
Attorney for Defendant Stone
120 N. 4th Ave.
Ann Arbor, MI 48104
734-677-3393
randallcroberts51@yahoo.com
P28595

April 1, 2021

### CERTIFICATE OF SERVICE

Randall C. Roberts certifies that on April 1, 2021, he electronically filed the foregoing with the Clerk of the Court using the ECF system. All ECF participants will be electronically notified via the court's Electronic Case Management System.

s/Randall C. Roberts