UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

UNITED STATES OF AMERICA,                Case No. 21-cr-20080

                    Plaintiff,                    Hon. Stephanie Dawkins Davis
                                                    U.S. District Judge
v.

ANTHONY STONE,

                    Defendant.

---

## RESPONSE TO MOTION TO SUPPRESS

---

Police officers legally conducted a traffic stop on Anthony Stone's uninsured vehicle. When a police officer approached the car and made contact with Stone, the officer noticed an open alcohol bottle in the center console. The officer directed Stone, the driver, and a female passenger to step out of the car. The officer asked Stone, "Is it okay if we search the car?" Stone relied, "Yeah." The officer asked, "Yeah?" and Stone again replied "Yeah." During the search, an officer found a backpack containing a firearm in the trunk area of the car, at which point Stone ran away from the scene. Police chased Stone and arrested him. Officers continued to search the car and backpack and found a handgun loaded with an extended magazine and a gun case with another loaded magazine all in the

backpack. Later, officers advised Stone of his *Miranda* rights and spoke with him. During the conversation, Stone made admissions about the firearm.

At the time of the traffic stop and search, Stone was on supervised release in two prior federal gun cases. Stone currently faces supervise release violations in those cases. Separately, the government has indicted Stone for being a prohibited person in possession of a firearm, and Stone has moved to suppress all evidence produced from the search of his vehicle and all statements he made. Because the traffic stop, vehicle search, and custodial interview were all lawful, the Court should deny Stone's motion. Further, Stone is not entitled to an evidentiary hearing because he has not raised any contested factual issues.

**BRIEF**

### Background

 On the evening of September 8, 2020, Michigan State Police Troopers Chiros and Ager were on patrol in Flint when they observed a vehicle exit the Economy Motel. Officers pulled their car around and ran the license plate through a Michigan Secretary of State database which showed the vehicle was not insured (EIV=N). The vehicle pulled into a Walmart parking lot and officers turned on their emergency lights.

Trooper Chiros approached the driver's side of the uninsured car, while

2

Trooper Ager approached the passenger side. After briefly speaking with Stone,

Trooper Chiros observed an open Tanqueray vodka bottle in the center console.

Trooper Chiros asked Stone to hand him the bottle. Stone complied and Trooper

Chiros initially placed it on the roof of the vehicle. It had only a small amount of

alcohol in it. Trooper Chiros asked Stone, "You guys aren't drinking that today, is

that old?" and Stone replied that it was "old." Trooper Chiros continued to speak

with Stone and asked him if the vehicle had insurance. Stone replied that it did.

Chiros then asked Stone to find the proof of insurance. While Sone looked through

papers he gave Trooper Chiros his identification, but did not initially give him a

driver's license.

Meanwhile Trooper Ager spoke with the front passenger, who was later

identified as Sarah Pinion. Pinion initially identified herself as "Amber" and told

Trooper Ager that she did not have identification. When Trooper Ager asked her

last name, she refused to provide it. Pinion also had difficulty lowering the

passenger-side window.

While Trooper Ager spoke with Pinion, Trooper Chiros told Stone to "hop

out of the car." Stone complied, and with Stone's permission, Trooper Chiros

quickly patted him down for weapons. Trooper Chiros continued to speak with

Stone as Stone looked through paperwork. Trooper Ager, meanwhile, continued to

speak with Pinion who continued to refuse to provide her last name. Trooper

Chiros told Stone, "she (referring to Pinion) looks like she's on something."

Trooper Chiros then asked Stone, "There is nothing illegal in the car,

nothing like that." Stone replied "No." Trooper Chiros asked Stone, "Is it okay if

we search the car." Stone said, "yeah." Trooper Chiros confirmed, "Yeah?" and

Stone again replied "Yeah." Trooper Chiros directed Stone to stand in front of the

patrol vehicle.

Trooper Chiros told Trooper Ager to have Pinion get out of the vehicle. As

soon as Pinion stepped out of the car, Trooper Chiros directed her to the front of

his patrol vehicle where he was able to look at her face and eyes. Trooper Chiros

told her, "So obviously, you've taken some sort of opiate or heroin." After a short

conversation, Pinion admitted that she had taken drugs— "I did a little bit of ice."

Trooper Chiros spoke with Pinion and asked her if she had anything in the car. She

denied having anything and Trooper Chiros turned to Trooper Ager, in the

presence of both Pinion and Stone and said, "he said we can search the car, so go

ahead." At that point, Trooper Ager began searching the car as Stone looked on.

Trooper Chiros continued to speak with Stone and Pinion as Trooper Ager

searched the car. During the conversation, Pinion told Trooper Chiros her name

was "Amber Daugherty." Trooper Chiros searched the name in his vehicle

4

computer, and did not find any information. As Trooper Ager searched the car,
Trooper Chiros also told Stone that the computer showed that the vehicle was
uninsured, which was why Stone was pulled over. While Trooper Chiros tried to
determine Pinion's identity, Stone smoked a cigarette and watched as Trooper
Ager searched the car. At one point Stone told Trooper Ager that he could access
the trunk of the vehicle from the tailgate.

Trooper Ager eventually found a backpack in the trunk and asked Stone, "is
that your bag?" Stone replied, "No." Trooper Ager felt the backpack and felt what
seemed to be a magazine inserted into a handgun. Trooper Ager unzipped the
backpack and found a black handgun with a black extended magazine inserted into
it. Stone then moved away from the front of the patrol vehicle and Trooper Chiros
said, "Mr. Stone stay right here for me." Stone then ran away from the scene.
Trooper Chiros yelled, "Hey!" and Trooper Ager ran after him.

Trooper Ager eventually caught up with Stone. They struggled and Trooper
Ager deployed his taser. Eventually Trooper Ager placed Stone under arrest.
Meanwhile, Trooper Chiros searched the rest of Stone's vehicle and the backpack.
In the backpack, Trooper Chiros seized a 9mm caliber handgun which was loaded
with a round in the chamber and with 30 rounds in the extended magazine. He also
found a gun case that contained an additional magazine which was loaded with 12

rounds of 9mm caliber ammunition.

Both Trooper Ager and Stone were taken to Hurley Medical Center in Flint for treatment of minor injuries. While Stone was at the hospital, officers read him his *Miranda* rights, which he waived. Officers surreptitiously recorded their interview with Stone. During the interview, Stone made several statements discussing how he got the firearm.

**<u>Argument</u>**

<u>Police had probable cause to stop Stone's vehicle.</u>

The Michigan State Police officers had a lawful basis to stop Stone's vehicle. In order to conduct a traffic stop, an officer must have either probable cause of a civil infraction or reasonable suspicion of criminal activity. *See United States v. Lyons*, 687 F.3d 754, 763 (6th Cir. 2012). Here, officers stopped Stone's car based on a reasonable suspicion that Stone was driving an uninsured vehicle in violation of Michigan law.

Other courts have determined that officers may lawfully stop a vehicle when information in LEIN, a law enforcement database, shows that the vehicle is uninsured. For example, *United States v. Lawrence*, 425 F. Supp. 3d 828, 832–33 (E.D. Mich. 2019) noted that operation of a motor vehicle without insurance was a misdemeanor under Michigan law, and *Lawrence* held that officers could

reasonably rely on the insurance information in LEIN regarding the insurance status of the vehicle. *See also, People v. Mazzie*, 326 Mich. App. 279, 297 (Mich. Ct. App. 2018) (police officer "had at least a reasonable suspicion that defendant was operating his vehicle without insurance, and therefore, the stop and detention to check for valid insurance was reasonable.").

Stone argues that the court should not follow *Lawrence* and *Mazzie* because he claims the insurance information in LEIN must be entered every 15 days, and therefore could have been stale. (*See* Def. Br., ECF NO. 11, PageID.34). Even assuming that most insurance companies only enter insurance information every 15 days, the fact that Stone could have subsequently obtained insurance did not deprive officers of probable cause. The Sixth Circuit's opinion in *United States v. Sandridge*, 385 F.3d 1032, 1036 (6th Cir. 2004) makes this clear. In *Sandbridge*, a police officer searched a database on March 5, 2002 and determined that a driver did not have a valid license. Over three weeks later, on March 27, 2002, the officer conducted a traffic stop of the unlicensed driver. The Sixth Circuit found that the officer had a reasonable basis for suspecting that the driver still lacked a valid license 22 days after the initial search, because driving without a license is a continuing offense. *Id.* Similarly, driving an uninsured vehicle is a continuing offense. Because the Michigan State Police troopers had no reason to believe that

7

Stone had recently obtained insurance, it was entirely appropriate for the officers to rely on the insurance information in LEIN.

Stone gave officers consent to search his car.

Prior to the search, Stone gave Trooper Chiros consent to search his car and then confirmed his consent. Defendant does not argue otherwise. During the search, Stone told Trooper Ager that he could access the trunk of the vehicle by opening the liftgate. Instead, Trooper Ager accessed the trunk by lowering the rear seats of the vehicle. Stone argues that Stone's suggestion somehow shows that he did not consent to a search of the trunk. To the contrary, Sone's suggestion appears to confirm that Stone permitted Trooper Ager to search the trunk and supports Stone's prior verbal consent.

The parties agree that a search based on consent does not violate the Fourth Amendment. (Def. Br., ECF No. 11, PageID.37). The Supreme Court has held that consent to search a vehicle implies consent to search unlocked containers—such as bags—within the vehicle. *Florida v. Jimeno*, 500 U.S. 248, 251 (1991). Here, Stone gave consent to search and did not revoke it or limit it in any way. When Trooper Ager asked Stone whether the backpack belonged to him, Stone could have replied that he did not consent to Trooper Ager searching the bag, but he did not.

8

<u>Police lawfully arrested Stone after he ran from officers, and they lawfully
interviewed him after they advised him of his *Miranda* warnings.</u>

Stone does not contest that officers lawfully arrested him after he ran away.

Nor does he contest that they advised him of his *Miranda* rights prior to interviewing

him. Though Stone seeks suppression of any statements following his arrest, his

argument hinges solely on the lawfulness of the initial vehicle stop and the search.

Because the stop and vehicle search were lawful, the Court should not suppress any

of Stone's statements.

<u>Defendant is not entitled to an evidentiary hearing.</u>

If the Court were to accept all of the facts presented in the his brief, the

government would still prevail on the legality of the traffic stop, the consent

search, and the admissibility of statements. The parties' dispute is legal, as opposed

to factual, and therefore, no evidentiary hearing is required. *United States v.

Abboud*, 438 F.3d 554, 577 (6th Cir. 2006) "An evidentiary hearing is required

'only if the motion is sufficiently definite, specific, detailed, and non-conjectural to

enable the court to conclude that contested issues of fact going to the validity of the

search are in question.' " *Id.* citing *United States v. Downs*, No. 96–3862, 1999

WL 130786, at *3 (6th Cir. Jan. 19, 1999). Here, the validity of the stop, consent

search, and interview simply do not depend on any contested factual issues such as

whether the Troopers had probable cause to search the vehicle, whether defendant disclaimed an interest in the backpack, and whether officers would have found the firearm and magazine during an inventory search. Accordingly, the Court should deny Stone's request for an evidentiary hearing, and deny his motion to suppress.

<u>Officers had probable cause to search Stone's car</u>

If the Court determines that there is a factual dispute regarding Stone's consent, the government would also likely present testimony to show that officers had probable cause to search Stone's vehicle. Prior to the search, officers observed the vehicle leave the Economy Motel, officers knew there was frequent drug activity at the Economy Motel, officers observed an open alcohol container in the front of the vehicle, the passenger appeared to be on drugs or intoxicated, the passenger did not provide her last name, and the passenger admitted to using "ice." If the Court holds a suppression hearing, the government will establish these facts to show officers had probable cause under *Arizona v. Grant*, 556 U.S. 332, 347 (2009) to search areas of the vehicle—including the accessible trunk compartment— where drug evidence or intoxicants could be located.

<u>Stone does not have standing because he disavowed ownership of the backpack.</u>

Additionally, the government may present testimony to establish that Stone disavowed his legal interest in the backpack which contained the firearm when he

10

told Trooper Ager that it was not his bag. *See United States v. Adams*, 583 F.3d 457 (6th Cir. 2009).

Officers would have inevitably found the backpack based on an inventory search

Finally, because the vehicle was uninsured and could not legally be driven, the government may present testimony regarding whether officers would have inevitably found the backpack pursuant to an inventory search. *See Whren v. United States*, 517 U.S. 806 (1996).

## **Conclusion**

Officers had a legal basis to conduct a traffic stop and to search Stone's vehicle. Stone's motion to suppress should be denied.

Respectfully Submitted,

SAIMA S. MOHSIN
United States Attorney

Dated: April 22, 2021

s/ *Jules M. DePorre*
JULES M. DePORRE
Assistant United States Attorney
600 Church Street
Flint, MI 48502
Phone: 810-766-5177
Fax:810-766-5427
jules.deporre@usdoj.gov
P73999

11

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on Thursday, April 22, 2021, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

**Randall Roberts**

<u>s/Jules M. DePorre</u>
Assistant United States Attorney
600 Church Street, Suite 200
Flint, MI   48502