## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**UNITED STATES OF AMERICA**
**PLAINTIFF,**

**VS.**                                                    **CASE NO.: 21-cr-20080**
                                             **HON. STEPHANIE DAWKINS DAVIS**

**ANTHONY D. STONE,**
      **DEFENDANT.**
_____/

## REPLY TO RESPONSE TO MOTION TO SUPPRESS EVIDENCE

Defendant Anthony Stone, through counsel, Randall C. Roberts, states the following in Reply to the government's Response to his Motion to Suppress Evidence:

A State bears the burden of establishing that an officer had a reasonable suspicion of illegal activity at the time of a seizure by creating a record that would support such a conclusion. *Ornelas v. United States*, 517 U.S. 690, 699-700(1996); *Brownv. Texas*, 443 U.S. 47, 52 (1979); *Delaware v. Prouse*, 440 U.S. 648, 659 (1979); *see Illinois v. Wardlow*, 528 U.S. 119, 140 (2000). Presently, the Court *only* has both Parties' counsels' approximations and description of the facts.  The reality is that both attorneys could perhaps take exception to the other's descriptive portrayal of the underlying activities engaged in by the investigating Troopers and Mr. Stone, the focus of their investigation.

1

The dashcam video does not appear to have been activated before the squad car did a "U" turn on Corunna Rd., and it appears as the though the passenger Trooper was still watching for the computer results as or after the two vehicles had both already turned onto a side street and were entering the WalMart parking lot. It appears there was at least one other car between them.  What we do not know from the video, is how long it took the Troopers to catch up close enough to see the rear license plate numerals. Then how long the computer data response was also is unclear.  What the video does show is Stone's vehicle pulling into a lined parking spot in an appropriate manner, the car between the Troopers and Stone turns, the lights on the squad car suddenly appear to be activated, and it pulls up in a sort of perpendicular position across the rear of Stone's vehicle, thus blocking him in. Calling that a "traffic stop" is a pretty generous reach.  Perhaps a parking lot stop. The defense would encourage a hearing to more appropriately create a record and develop the facts.   The Fourth Amendment requires a State to actually do the work required to establish reasonable suspicion when a seizure is challenged.

Much was made by the government about Stone's consent to search and his free conversation, after Miranda warnings, and after treatment for his injuries. Consent is a matter for the Court to determine.  Stone's qualification of his permission, by directing the Trooper's way of accessing his hatch-area/cargo space, sounds like a limitation that calls into question the "voluntariness" of his

2

consent.  Whether he consented or not, being left to the Court, one overarching

theme is Stone did not consent or agree to be stopped, then questioned and

searched.

Stone's vehicle was not impeding traffic, or otherwise blocking a road or

being on a shoulder in a dangerous situation. The Supreme Court also gave us

their limitation of vehicle searches in *Arizona v. Gant*, 556 U.S. 332 (2009).

Police may search the passenger compartment of a vehicle only if it is reasonable

to believe the ***arrestee might access the vehicle*** at the time of the search for a

weapon, **or the vehicle contains evidence of the *offense of arrest*** (in this

instance, operation of vehicle without insurance). Mr. Stone and his passenger

were out of his vehicle and in front of it near the hood of the engine compartment.

He couldn't access the internal compartment of the vehicle, period. There was

nothing reported about any restriction or deficiency with Stone's Michigan

Driver's License, nor the car's registration being expired.  Certainly, the vehicle's

insurance must have been valid/current at the time the registration was secured, or

last renewed.  First of all, the lack of insurance really isn't about Defendant's lack

of privileges or capacity to safely operate a vehicle.  Secondly, and rather

mysteriously, the Troopers did not issue an appearance ticket or traffic citation for

operating this vehicle without insurance.  Equally as interesting, there was no

Inventory list, of the results of any Inventory Search, left in the vehicle or with

Mr. Stone.

For all the above-mentioned reasons, those in the original Motion to

Suppress Evidence and Brief (ECF 11, PgID 24, filed 4-11-2021), and, any

arguments made in oral argument, Defendant respectfully asks this Honorable

Court to Suppress all evidence and statements derived from this challenged

investigatory stop and search.  Further, Defendant reasonably asks the Court to

grant his request for an evidentiary hearing as well as the possibility of further

pleading after the testimony has been rendered, if deemed warranted.

s/ Randall C. Roberts
Attorney for Defendant
120 N. 4th Ave.
Ann Arbor, MI 48104
734-677-3393
randallcroberts51@yahoo.com
P28595

April 29, 2021


## CERTIFICATE OF SERVICE

Randall C. Roberts certifies that he served a copy of this document upon the
government attorney and the Court on April 29, 2021 by the ecf system in EDMI.

s/ Randall C. Roberts
